UNITED STATES DISTRICT COURT
CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

M. Flores
BY DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. Bokaiyan et<br>AHMAD BOKAIYAN,<br>Kalo<br>Defendant | § § § § | CRIMINAL NO. H-19-232 (2) |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Quincy L. Ollison, Assistant United States Attorney, and the defendant, Ahmad Bokaiyan ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One (1) of the Indictment. Count One charges Defendant with Conspiracy to Commit Theft Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The statutory maximum penalty for a violation of Title 18, United States Code, Section 371, is imprisonment of not more than five (5) years and a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three (3) years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised

release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(2). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a Defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction

and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

8. The United States agrees to each of the following:

    (a)    Defendant pleads guilty to Count One (1) of the Indictment. The United States will dismiss all other remaining Counts in the Indictment at sentencing.

    (b)    At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines. Additionally, if the Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

    (c)    The parties agree that $20,238.26 was returned to the Houston Gateway Charter School, and, therefore the defendant should receive credit against the amount of loss in this case.

    (d)    The United States does not oppose a mitigating role adjustment for the defendant in USSG § 3B1.2 between (a) and (b).

**Agreement Binding - Southern District of Texas Only**

9. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney. The United States will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

10. The United States reserves the right to carry out its responsibilities under guideline sentencing. Specifically, the United States reserves the right:

4

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant, nonetheless, acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

12. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a)  If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b)  At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

   (c)  At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One (1) of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On or about 2007, the Defendant was employed as a contract employee by Richard Garza, Superintendent of Houston Gateway Academy ("HGA"), a public Charter School located in Houston, TX to provide IT services for HGA. The Defendant had no prior certifications in IT related services. Additionally, he owned a business entity called Hot Rod Systems for which he provided IT services on a contractual basis.

On March 26, 2014, co-defendant Richard Garza, entered into a contract with the Defendant through Hot Rod Systems to purchase, install and configure IT Computer Network Equipment at a new HGA campus that was to be constructed. At that time, ground had not been broken for construction of the new school. The amount of the contract was for a total of $280,841.85.

Beginning in late March 2014, Garza provided three (3) checks to Hot Rod Systems in the total amount of $252,757.67 from HGA's operating account at IBC Bank in Houston, TX. On March 27, 2014, Garza signed a check for $87,477.70 to Hot Rod Systems. On April 2, 2014, he signed a check for $98,829.90, and on April 22, 2014, he signed a check for $66,450.07. The Defendant deposited each check into the Hot Rod Systems account also located at IBC Bank.

Beginning on April 3, 2014, Garza directed the Defendant to make wire transfers from the three checks deposited into the Hot Rod Systems account. Garza directed the Defendant to wire the money to a bank account called Financial Management & Consulting Services ("FMCS"), located at Wells Fargo Bank in Houston, TX. On April 3, 2014, Defendant wired $87,477.70 to the Wells Fargo account as Garza directed. On April 8, 2014, Defendant wired $54,985.99 into the account, and on May 15, 2014, Defendant wired $21,917.49 into the same Wells Fargo account. Garza directed the Defendant to wire a total of $164,381.18 into the Wells Fargo account before the purchase of any equipment or work was performed. The Defendant believed he had to follow GARZA's directions in order to keep the IT services contract.

From May 2014 to early 2015, no IT equipment was purchased by the Defendant, and no other work on the IT Computer Network contract was completed by FMCS or any other entity.

In early 2015, the Texas Education Agency ("TEA") reviewed the IT services contract and objected to HGA paying out over 90% of the contract value before any work was completed. In

7

February 2015, Garza directed the Defendant to begin purchasing IT equipment only after TEA questioned the IT services contract. He purchased approximately $75,823.30 worth of IT equipment while still awaiting completion of the new campus. By May 2015, the Defendant informed Garza that he had possession of all of the IT equipment at his home and he could no longer store it there. Garza instructed the Defendant to move the equipment to GHA.

In July 2015, upon demand by TEA, Bokaiyan returned $20,238.62 to HGA via cashier's check. Bokaiyan intentionally avoided inquiring of Garza about returning the $20,238.62, because he believed he had to follow GARZA's directions in order to keep the IT services contract. Bokaiyan was going to profit in excess of $40,000 dollars from the contract, and did not want lose the contract.

From 2015 until 2018, the Defendant intentionally did not question Garza about the $164,381.18 of HGA funds he transferred back to Garza for which both of them knew that no equipment was purchased nor work performed utilizing that money.

In October 2018, Garza met with the Defendant and told him to tell a federal law enforcement agent that the checks he wrote to Hot Rod Systems were to pay back a loan. Moreover, in April 2019, just before the Defendant testified before a federal grand jury here in Houston, GARZA told the Defendant to tell the grand jury that the wires he made to the FMCS account were to repay a loan. At this point, the Defendant clearly knew that FMCS was not a subcontractor, but was the name of Garza's personal bank account, and the funds he wired to Garza's FMCS account were not for repayment of a loan to him or to Hot Rod Systems.

**Breach of Plea Agreement**

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea

8

agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to

facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Fines

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

21. This written plea agreement, consisting of 14 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States,

Defendant, and Defendant's counsel.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

    22.  Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on September 20, 2019.

_____
Defendant

Subscribed and sworn to before me on September 20, 2019.


DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK


By: _____
Deputy United States District Clerk


APPROVED:

Ryan K. Patrick
United States Attorney

By: _____        _____
Quincy L. Ollison                           Francisco Fernandez
Assistant United States Attorney            Attorney for Defendant
Southern District of Texas
Telephone: 713-567-9000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. H-19-232 (2) |
| AHMAD BOKIAYAN,<br>Defendant | § § § | |

PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Criminal Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Francisco Fernandez
Attorney for Defendant

9/20/2019
_____
Date

13

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          ____9/20/2019_____
Ahmad Bokaiyan                                                  Date
Defendant